IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ERIN JENSEN<br><br>                Plaintiff,<br><br>vs.<br><br>SEVIER SCHOOL DISTRICT et al.,<br><br>                Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No.  2:04CV166 DAK |

       This matter is before the court on Defendants' "Resubmitted Motion for Summary Judgment" and on Plaintiff's Motion for Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 37.  A hearing on the motions was held on July 11, 2005.  At the hearing, Plaintiff Erin Jensen was represented by Erik Strindberg and Ralph E. Chamness.  Defendants were represented by Kirk G. Gibbs.[1]  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to the motions.  Now being fully advised, the court enters the following Memorandum Decision and Order.

---

    [1] The Defendants in this action are the Sevier School District a/k/a the Board of Education of Sevier School District (the "District"), Brent M. Thorne ("Mr. Thorne"), Carolyn Washburn ("Ms. Washburn"), Jack Hansen ("Mr. Hansen"), Tom Hales ("Mr. Hales"), Don Naser ("Mr. Naser"), Jerald Oldroyd ("Mr. Oldroyd"), and Russell Peterson ("Mr. Peterson") (collectively referred to as "Defendants").

I. PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff has moved for an entry of default judgment against Defendants as a sanction for Defendants' misconduct in this action. Plaintiff contends that, from the very beginning of this lawsuit, Defendants and their attorneys at the Utah Attorney General's Office (the "AG's Office") have engaged in a pattern of conduct thwarting the goal of the Federal Rules of Civil Procedure ("FRCP"), forcing Plaintiff to file motions to compel to obtain discovery, which should have been produced as a matter of course and which has resulted in significant delays. Then, at the end of discovery and after filing a Motion for Summary Judgment, the AG's Office replaced its lead attorney with new counsel. Just before Defendants' reply brief was due, the Attorney General's Office filed a motion to withdraw as counsel for Defendants. The court granted the motion, but advised Defendants to quickly obtain new counsel, as the court declined to move the trial date.

In preparing the reply memorandum, Defendants' new counsel discovered and disclosed to Plaintiff a document that should have been produced during discovery. Defendants' new counsel then produced yet another document that should have also been produced. Defendants had previously produced versions of both of these documents that are, according to Plaintiff, materially different from the documents recently produced. Plaintiff contends that if she had received these documents during discovery, her discovery plan would have been substantially different. Due to this misconduct, Plaintiff argues that default judgment under FRCP 37 is appropriate in this case.

In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit stated that

before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id.* at 921. The court also made clear that "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction.

While the court is deeply troubled by the actions of Defendants and/or Defendants' prior counsel in this case, the court declines to enter default judgment. While Plaintiff has been prejudiced–and the judicial process has been impaired–to some degree by these events, the court and Defendants' new counsel have taken several steps to remedy that prejudice.[2] Through various motions and rulings, the court has previously provided to Plaintiff (and Defendants) the Sealed Confidential Disclosure that explains their reason for withdrawing, filed by the AG's

---

[2] The prejudice to Plaintiff, however, is not as great as Plaintiff contends. Plaintiff's counsel argues that the omitted language from the "unsanitized" version of the Board Minutes constitutes direct evidence that the true reason Plaintiff's contract was not renewed was because of religious animus stemming from Superintendent Thorne's and the Board's belief that Plaintiff believed in witchcraft and that the District was attempting to cover up this fact. However, while the existence of two versions of the Board Minutes is troubling (and the fact that the more incriminating version was not previously produced only exacerbates the problem), the "unsanitized" version does not "state" that these were the reasons for not renewing Plaintiff's contract. It simply states that these comments were made. It does not reflect who made such statements or what weight was given to these concerns. Further, the court agrees with Defendants that the fact that such issues were discussed in a Board Meeting was not concealed because at least one member of the Board–Carolyn Washburn–testified in her deposition about the fact that individuals in the community made comments regarding Plaintiff's being a witch or her believing in witchcraft and that this was discussed, possibly at the February Board Meeting.

Office upon order of the court.   In addition, new counsel has provided the documents that should have been produced to Plaintiff long ago.

Another factor in declining to enter default judgment is the fact that the court has already sanctioned Defendants by ordering them to pay for all costs, including attorneys' fees, associated with opposing Defendants' previous motion for summary judgment, even though much of the work related to the first opposition memorandum was necessary for and actually used in Plaintiff's resubmitted opposition memorandum.   Further, as explained below, Defendants shall bear the cost, including attorneys' fees, pertaining to the discovery that must now be redone.

Additionally, it is unclear to the court who is to blame for this misconduct.  Defendants' new counsel has produced some evidence that Defendants provided all the documents to their previous counsel at the beginning of this litigation.  Without the parties having conducted extensive discovery into the matter, and thus, without having a fully developed record, it appears to the court, at this point, that the fault lies with the Attorney General's Office.  Whether the failure to produce the documents was an intentional cover-up or a negligent mistake resulting from the case being reassigned to three or four different Assistant Attorneys General remains unknown.

In any event, to enter default judgment against the Defendants is too drastic a remedy, particularly when the court had not warned them previously, when it does not appear that they were at fault in failing to produce the documents, when the court has already required them to bear the cost of the mistake, and when the court and Defendants' new counsel has attempted to remedy the problem without significantly delaying the trial.  In addition, at trial, the Defendants will have to live with the fact that seemingly "sanitized" versions of documents were produced,

while the arguably incriminating documents were hidden.

To accommodate the obvious need for additional discovery, the court will permit Plaintiff to conduct discovery on any of the new documents provided to Plaintiff after the discovery deadline. Plaintiff should be selective in deposing only those people likely to have the most relevant information, as the court will permit up to 10 depositions to be taken, none to exceed four hours.[3] Defendants shall pay all reasonable costs, including reasonable attorneys' fees, related to the depositions and the preparation involved in taking the depositions. In addition, Defendants shall travel to Salt Lake City for the depositions, unless undue burden will result.

In light of Plaintiff's insistence that the trial not be bumped once again (although the court notes that it was Plaintiff's counsel who requested the most recent delay), the court has attempted to set forth a workable timetable for conducting the necessary additional discovery while bumping the trial date by less than one month. The trial was originally set to begin on September 19, 2005 and will now begin on October 17, 2005. Plaintiff may therefore conduct discovery from July 25, 2005 until September 7, 2005.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment, arguing that Plaintiff cannot create a genuine issue of disputed fact regarding her discrimination claims.

**A. Standard of Review**

A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure

---

[3] Upon a showing of good cause, the court will entertain a motion for leave to take additional depositions. Defendants, however, will not be responsible for costs, including attorneys' fees, associated with any such motion.

is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the non-movant is entitled to the benefit of whatever reasonable inferences there are in its favor, the reasonableness of those inferences is scrutinized in light of the undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

**B. Discussion**

Plaintiff taught at South Sevier High School ("SSHS"), which is in the Sevier School District, under provisional contracts during the school years 2000-01, 2001-02, and 2002-03. A provisional teacher works under a contract that contemplates employment during only the current school year. At the end of a provisional teacher's work for a given year, the contract

expires.  The provisional contract states that a teacher has no expectation of continued employment.  If the provisional teacher contracts for four consecutive years with the District, the teacher's status becomes "career status," entitling the teacher to certain rights under Utah state law.  Staffing needs are generally based upon student population and funding.

In this case, the Defendants contend that the staffing needs analysis indicated that the teaching staff at SSHS needed to be reduced.  They also contend that falling SAT scores and inadequacies in Plaintiff's teaching of certain curricula, including daily oral language and core curriculum, among other reasons, led to the decision to release her.   Defendants also contend that District policy dictated that released provisional teachers were not permitted to reapply for future openings.

Plaintiff, on the other hand, contends that her contract was not renewed–and she was not permitted to reapply for future openings–based upon religious and gender discrimination.  She contends that she is not LDS and that the only two teachers at South Sevier High School whose provisional contracts were not renewed were the two individuals who were not active in the LDS Church.  Plaintiff also relies on evidence that the Board discussed that "[s]he also believes in witchcraft and paints her windows in her classroom black.  Halloween is her favorite holiday and she doesn't hide the fact that she prefers the dark side."  Regarding her gender discrimination claim, she claims that there is significant gender disparity at South Sevier High School and that during Defendant Peterson's tenure as principal there, at least five female teachers were removed from the High School and, in all but one case, replaced immediately with male teachers.  She also proffers evidence that she was the only female regular (non-special education) teacher hired during Defendant Peterson's tenure at SSHS.  Plaintiff also testified–and offered testimony of

other faculty members–that Defendant Peterson ignored comments from women faculty members and treated males differently. Plaintiff also contends that the Board had ignored complaints from two parents about the lack of female teachers at SSHS.

Subsequent to her release, Plaintiff submitted two applications for two different teaching positions which opened up at SSHS in the summer of 2003.  She was not considered for either position.  The District contends that it was following an administrative directive that employees released as a provisional employees should not be placed in the District hiring pool if they reapply.  At some point, the District realized that she was a released provisional employee and "pulled" her application so that she was not considered for an interview.

Plaintiff disagrees that the District had a policy, presenting evidence that Defendants' testimony is full of internal inconsistencies.  For example, some Board Members testified that there is no such policy regarding released employees.  Another Board Member testified that the policy had just been established.  Another individual testified that the policy pertained only to the elementary school hiring pool.  Additionally, Plaintiff presents evidence that Defendant Peterson repeatedly urged her to reapply.  Moreover, she claims that another individual who was hired after Jensen's release, was indeed a previously released teacher.

Although the District has articulated non-discriminatory reasons for not renewing Plaintiff's provisional contract–and for not considering her applications for new positions–Plaintiff has created genuine issues of disputed fact regarding whether those reasons are pretextual.  The court finds that Plaintiff has marshaled evidence from which a factfinder could rationally find that the explanations given by Defendants were unworthy of credence and that Defendants intentionally discriminated against her, based on her religion and/or her gender.

8

As the Supreme Court has stated, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000).

In addition, the court finds no merit to Defendants' argument that the individual Defendants are entitled to qualified immunity. Similarly, the court declines to dismiss the claims against Defendant Peterson at this time. While a jury may well conclude that he had no decision-making authority and/or did nothing to cause the alleged discrimination, particularly in light of the significant evidence that he did not want to release Plaintiff, there is enough evidence concerning his role in the alleged discrimination against Plaintiff to permit this issue to be decided by a jury. Accordingly, Defendants' Motion for Summary Judgment is denied.

## III. TRIAL ORDER

This case is set for a five-day jury trial, which has been delayed by approximately one month and is now set begin on **October 17, 2005** at 8:30 a.m. In order to expedite the conduct of the trial in this case, counsel are instructed as follows:

### A. Proposed Voir Dire and Verdict Form

*1. Proposed Voir Dire*

The parties must file any proposed voir dire no later than **October 13, 2005**.

*2. Special Verdict Form*

The parties must file a proposed special verdict form no later than **October 17, 2005.** The parties must submit an original and a copy, along with a computer disk, formatted for

WordPerfect, containing the proposed Special Verdict Form.[4]

**B. Jury Instructions**

Upon request, the court's stock civil jury instructions will be mailed or emailed to the parties.[5] The stock jury instructions should not be resubmitted to the court with the parties' proposed instructions. All applicable stock jury instructions will be used at trial, absent a compelling reason why a particular instruction should not be used or should be altered. The parties should not, absent a compelling reason, submit instructions that are duplicative of the stock jury instructions. All additional jury instructions must be submitted according to the following procedure:

1. The parties are required to jointly submit one set of stipulated final instructions. To this end, the parties must serve their proposed instructions upon each other by **September 23, 2005**.[6] The parties must then meet and confer to agree on a single set of instructions, to the extent possible.

2. If the parties cannot agree upon a complete set of final instructions, they may submit separately those instructions upon which they cannot agree. However, the parties are expected to agree upon the majority of the substantive instructions for

---

[4] In lieu of submitting a computer disk, the parties may email their proposed special verdict form and the proposed jury instructions listed below, in WordPerfect format, to: **www.utdecf_kimball@utd.uscourts.gov**

[5] Please contact Arline Rubin (524-6610) to obtain a copy of the court's stock civil jury instructions.

[6] All documents to be served pursuant to this Order must be served via facsimile, email, or hand-delivery.

      the case.

3.     The stipulated instructions and each party's supplemental instructions must be filed and served by **October 3, 2005**. The parties should file an original and one copy of each set of instructions, which must include citations to authority. The parties must also provide a computer disk, formatted for WordPerfect, containing the proposed instructions, without citation to authority. Each party's supplemental instructions must be served on the other party by the same date.

4.     By no later than **October 11, 2005**, each party must file and serve its objections to the supplemental instructions proposed by the other party. All such objections must recite the proposed disputed instruction in its entirety and specifically highlight the objectionable language in the proposed instruction. The objection must contain citations to authority and a concise argument explaining why the instruction is improper. If applicable, the objecting party should submit an alternative instruction addressing the subject or principle of law.

5.     By no later than **October 17**, **2005**, the parties may file and serve a concise written argument supporting the propriety of their proposed instructions to which the other party objected.

**C.  Pretrial Order**

A stipulated Pretrial Order must be filed by **September 19, 2005**. The form of the Pretrial Order should conform generally to the approved form which is reproduced as Appendix IV to the Local Rules of Practice.

### D.  Motions in Limine

All motions in limine must be filed and served no later than **September 26, 2005.** Responses to the motions must be filed and served by **October 3, 2005**.  Replies must be filed no later than **October 7, 2005**.  A hearing on the motions, if necessary, will be held during the week of **October 10, 2005.**   The court will notify the parties if–and when–a hearing will be held.

### E.  Exhibits

All exhibits must be premarked before trial.  Plaintiff's exhibits should be marked numerically, and Defendants' exhibits should be marked alphabetically.

### F.  Pretrial Conference

In light of this Trial Order, a pretrial conference is unnecessary.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' "Resubmitted Motion for Summary Judgment" [docket # 142] is DENIED.  Plaintiff's Motion for Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 37 [docket # 144] is DENIED. Plaintiff may conduct further discovery, as set forth above, from July 25, 2005-September 15, 2005.  The trial date has been moved from September 19-23, 2005 to October 17-21, 2005. Deadlines regarding a Pretrial Order, proposed jury instructions, proposed verdict forms, proposed voir dire, and motions in limine have been set forth above.

DATED this 22nd day of July, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge